**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

**CIVIL ACTION NO: 4:17-CV-00015-JHM**

**WENDY HARPER**                                                                                    **PLAINTIFF**

**V.**

**TERRY ELDER, et al.**                                                                            **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on Defendants' Motion for Summary Judgment [DN 21] and Plaintiff's Motion to Exceed the Page Limit on her Response to the Motion for Summary Judgment [DN 26]. Fully briefed, these matters are ripe for decision. For the following reasons, Plaintiff's Motion to Exceed the Page Limit is **GRANTED** and Defendants' Motion for Summary Judgment is **GRANTED**.

**I.       BACKGROUND**

According to the Complaint, Ms. Wendy Harper began working at the Webster County Jail (the "Jail") in October 2013 as a Deputy Jailer. [DN 1 ¶ 10]. Webster County, Kentucky (the "County") is directly responsible for the policies, customs, and practices implemented at the Jail, as well as the hiring, training, and supervision of Jail employees. [*Id.* ¶ 2]. Directly following her hiring, Jailer Terry Elder and Chief Deputy Greg Sauls warned Ms. Harper not to let the men on her shift run her off the job. [*Id.* ¶ 11]. Ms. Harper claims that within her first week on the job, she received additional warnings from coworkers to beware of Deputy Brad Conaway, "who had historically exhibited hostile attitudes toward female employees." [*Id.* ¶ 12]. Specifically, Ms. Harper named four individuals—Deputies Dustin Loukota, Troy Sheerer, and Randy Beech and Control Room Operator Layla McNeily—who forewarned her that Mr.

Conaway was known to make sexual advances towards female employees and had treated the female employees so badly that one resigned and two recently switched shifts to avoid Mr. Conaway. [*Id.* ¶ 13–14].

Ms. Harper alleges that her first interaction with Mr. Conaway was riddled with sexual harassment and that the harassment continued until she made clear to Mr. Conaway that she was unwilling to accompany him on prisoner transports. [*Id.* ¶¶16–18]. Upon this clarification, Ms. Harper says Mr. Conaway's "behavior toward her changed from flirtation to aggression," culminating in his screaming at her in front of coworkers and inmates and making efforts to undermine her authority as a Deputy. [*Id.* ¶ 18]. Ms. Harper cites as an example an incident in the spring of 2014—Ms. Harper placed a cell on a 24-hour lockdown after inmates' poor behavior, shortly thereafter Mr. Conaway entered the cell block and immediately removed the punishment despite lacking supervisory authority over Ms. Harper. [*Id.* ¶ 19]. As she was leaving work that day, Ms. Harper alleges Mr. Conaway, in his truck, raced toward her, missing her only by only a few inches as he exited the Jail's parking lot. [*Id.* ¶ 21]. The next day, Ms. Harper claims she filed a written complaint and submitted it to Mr. Elder, who she says laughed when he received it and sent her back to work. [*Id.* ¶ 22].

Ms. Harper alleges that following this incident Mr. Conaway's hostility toward her increased. [*Id.* ¶ 23]. Mr. Conaway would frequently yell at Ms. Harper and berate her for her workplace performance despite her male counterparts performing their job functions the same way. [*Id.* ¶¶ 23–24]. In response, Ms. Harper alleges she "filed numerous written complaints against Mr. Conaway's [*sic*], citing his hostile and abusive conduct." [*Id.* ¶ 26]. Instead of any resolution to the situation from Mr. Elder or Mr. Sauls, Mr. Conaway was promoted to Sergeant in the fall of 2015, becoming a direct supervisor to the deputies. [*Id.*]. Following his promotion,

Ms. Harper alleges Mr. Conaway began assigning her menial tasks in an effort to disrupt her work day, leading her to continue filing written complaints about his behavior. [*Id.* ¶ 27–28].

Ms. Harper asserts that beginning sometime in 2016 she observed another employee, Deputy Jimmy Hernandez, interacting inappropriately with female inmates—flirting with them and passing them small gifts. [*Id.* ¶ 30]. Ms. Harper, believing this to be a violation of the Prison Rape Elimination Act ("PREA") reported the behavior to Mr. Conaway, as he was the direct supervisor on duty. [*Id.*]. Ms. Harper contends she reported similar behavior to Mr. Conaway on numerous occasions. [*Id.*]. In late April 2016, Ms. Harper reported the same behavior to Mr. Conaway who allegedly screamed at her to mind her own business and that if she did not drop the matter "all hell would break lose [*sic*]." [*Id.*]. In response, Ms. Harper claims she immediately went to Mr. Elder's office and explained the situation, "that she could not be subject to Mr. Conaway's abuse any longer, and that she would have to find another place to work." [*Id.* ¶ 31]. Thereafter, Mr. Elder called Mr. Conaway to his office where he told Mr. Conaway to fix the situation with Mr. Hernandez but offered no resolution to Mr. Conaway's continuing abuse. [*Id.* ¶ 32].

Ms. Harper alleges she began to experience "extreme anxiety and depression, including bouts of chest pain, migraines, and difficulty breathing." [*Id.* ¶ 33]. After seeing a doctor, Ms. Harper claims she was informed that her condition would not improve if she continued working with Mr. Conaway. [*Id.* ¶ 35]. Ms. Harper, enjoying the other aspects of her job, hoped to find a way to return—she requested that Mr. Elder move Mr. Conaway to the Jail's other daytime shift so she would not have to work with him. [*Id.*]. Instead, Mr. Elder offered to move Ms. Harper to the night shift—Ms. Harper alleges this offer operated as a demotion. [*Id.*]. Thereafter, Ms. Harper took leave under the Family Medical Leave Act ("FMLA") to obtain further

treatment.  [*Id.* ¶ 35].  Ms. Harper claims she was unable to return to her position due to her working conditions and that Mr. Elder and the County refused to take adequate remedial action against Mr. Conaway's behavior, eventually causing her constructive discharge.  [*Id.*].

Ms. Harper filed this lawsuit in February 2017 against Mr. Conaway, Mr. Elder, and the County (collectively, the "Defendants").  [DN 1].  She asserts claims for violation of two provisions of the Kentucky Civil Rights Act ("KCRA"), her Equal Protection Clause and Title VII rights pursuant to § 1983, and the Kentucky Whistleblower Act ("KWA").  [*Id.* ¶¶ 38–72]. Following discovery, the Defendants filed the instant Motion for Summary Judgment claiming that despite the allegations in her Complaint, the evidence submitted by Ms. Harper failed to raise a genuine dispute of material fact on each of her causes of action.  [DN 21].  Thereafter, Ms. Harper filed a thirty-seven page Response to the Motion for Summary Judgment, well exceeding the permitted page count.  [DN 25].  The next day, Ms. Harper filed a Motion for Leave to File Excess Pages arguing that the Defendants' Motion required a lengthy response.  [DN 26]. Defendants did not oppose Ms. Harper's Motion and later filed their Reply for the Motion for Summary Judgment.  [DN 30].

## II.    STANDARD OF REVIEW AND LAW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying the portion of the record that demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts

demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

### III.   DISCUSSION

The Court will address first the Motion to Exceed the Page Limit followed by Defendants' Motion for Summary Judgment as to each of Ms. Harper's claims.

#### A.  Motion to Exceed the Page Limit

In response to the Motion for Summary Judgment, Ms. Harper filed a thirty-seven page response [DN 25] and thereafter filed a Motion to Exceed the Page Limit [DN 26]. Defendants did not oppose Ms. Harper's Motion and thereafter filed their Reply. [DN 30]. Ms. Harper's Motion to Exceed the Page Limit is **GRANTED**.

#### B.  Motion for Summary Judgment

Defendants move the Court to grant summary judgment in their favor on each of Ms. Harper's claims. The Court will address each claim in turn.

## 1. Hostile Work Environment – KRS § 344.040

In Count I, Ms. Harper claims she was subjected to discrimination and work-place harassment based on her sex, specifically claiming violations of the KCRA. KRS § 344.040. As support for her allegation, Ms. Harper claims that her co-worker, and later superior, Mr. Conaway pursued her sexually, acted to intimidate her, and continually took efforts to undermine her work. [DN 1 ¶ 42].

A sexual harassment claim brought under the KCRA is to by analyzed in the same manner as a claim brought pursuant to Title VII. *See Vinova v. Henry Cnty. Bd. of Educ.*, 2015 WL 7681246, at *3 (E.D. Ky. Nov. 24, 2015) (quoting *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 408, n.5 (6th Cir. 1997) ("Because KRS Chapter 344 mirrors the federal Title VII, and because its general purpose 'is to provide a means for implementing within the state the policies embodied in Title VII . . . it is common practice to look to the federal counterpart in construing KRS Chapter 344.'"). Discrimination in the form claimed by Ms. Harper occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999) (internal quotation marks and citation omitted). To establish a prima facie case of a hostile work environment based on sex, a plaintiff must show the following: (1) she is a member of a protected class; (2) she was subjected to unwelcomed harassment; (3) the harassment was based on her sex; (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive/hostile work environment; and (5) her employer is vicariously liable. *Id.* at 561.

Preliminarily, it is necessary to determine whom among the defendants may be liable for such a claim. Ms. Harper brings this claim against Mr. Conaway, Mr. Elder, and the County. [DN 1 ¶¶ 38–48]. Title VII and the KCRA provide that it is unlawful for an employer, or its agent, to discriminate against an individual based on sex. In *Wathen v. General Electric Company*, the Sixth Circuit concluded that Title VII did not allow recoveries against individual employees or supervisors unless they were an "agent" of the employer. 115 F.3d at 404–05. Title VII fails to define "agent," but it has been interpreted by courts to be "an individual who 'serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment.'" *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 803 (6th Cir. 1994) (quoting *Sauers v. Salt Lake Cnty.*, 1 F.3d 1122, 1125 (10th Cir. 1993)). Mr. Elder, as elected jailer, may make such decisions over deputies such as Ms. Harper and accordingly may be liable for KRS and Title VII violations. However, Mr. Conaway, even as a sergeant in a supervisory position does not wield such power. That being the case, Mr. Conaway is entitled to summary judgment on Ms. Harper's KRS § 344.040 claim.

Without discussing the evidence provided by both sides concerning every element of this claim, it is enough to focus on the fourth requirement—that the harassment be severe or pervasive. To be sufficiently "severe or pervasive," (1) the conduct must be enough to create an environment that a reasonable person would find hostile or abusive, and (2) a plaintiff must subjectively regard the environment as abusive. *Stanley v. Cent. Ky. Cmty. Action Council, Inc.*, 2013 WL 3280264, at *6 (W.D. Ky. June 27, 2013) (citing Harris *v. Forklift Sys.*, 510 U.S. 17, 21 (1993)). This inquiry considers the totality of the circumstances. *Harris*, 510 U.S. at 23. Relevant considerations include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

7

unreasonably interferes with an employee's work performance." *Id.* "[C]onduct must be extreme to amount to a change in the terms and conditions of employment . . . ." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "[S]imple teasing, . . . offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* (internal quotation marks and citation omitted).

The evidence offered by Ms. Harper as to this element does not create a genuine dispute and, as such, is insufficient to defeat the Motion for Summary Judgment. Instead, at most the evidence offered, if believed, amounts to a classic example of the "sporadic use of abusive language, gender-related jokes, and occasional teasing" that does not support a Title VII or KRS claim. *Id.* (internal quotation marks and citation omitted). However, there is an additional problem—Ms. Harper submits only her own deposition testimony and affidavit as support for the contention that she endured abuse several times a week for the entire duration of her employment. It is well-established in this district, as it is across the nation, that "self-serving affidavits without factual support in the record will not defeat a motion for summary judgment." *Reich v. City of Elizabethtown*, 2018 WL 6028719, at *5 (W.D. Ky. Nov. 16, 2018). The remainder of the record consists of sworn testimony from individuals—Mr. Elder, Mr. Sauls, and Mr. Conaway—who refute this evidence. *See generally* DN 25-3, DN 25-4, DN 25-6.

Because this element exists in the disjunctive, Ms. Harper may also submit evidence to show the alleged abuse was sufficiently severe, yet she fails to do this as well. The only allegation that would rise to the requisite level of severity would be the parking lot incident, but, again, this allegation is only evidenced by her self-serving personal submissions. Despite Ms. Harper claiming that Ms. McNeily witnessed the incident, it is the Defendants who submitted an affidavit from Ms. McNeily. [DN 21-5]. Therein, Ms. McNeily claims she never witnessed the "parking

8

lot 'incident'" described by Ms. Harper. [DN 21-5 ¶ 8]. The remaining allegations consist of workplace yelling confrontations, undermining job-related decisions, and the existence of general disdain between Ms. Harper and Mr. Conaway. However, such allegations, even if fully supported in the record, do not rise to the requisite level of severity necessary to constitute severe harassment for a hostile work environment claim. *Faragher*, 524 U.S. at 788. Accordingly, Defendants' Motion for Summary Judgment as to Ms. Harper's hostile work environment claim is **GRANTED**.

### 2. Gender-Based Discrimination – KRS § 344.040

As her second claim under Count I, Ms. Harper alleges she was the victim of gender-based discrimination—specifically, by way of Mr. Conaway's "persistent sexual advances, aggression and intimidation, as well as his ongoing attempts to undermine her work." [*Id.* ¶ 42]. As was true of her hostile work environment claim, Ms. Harper's claim for gender discrimination pursuant to KRS § 344.040 is analyzed in the same manner as would be a claim brought under Title VII. Where, as here, a plaintiff offers only indirect evidence of discrimination, she may establish a prima facie case under Title VII by showing: (1) she is a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment decision; and (4) she was replaced by a person outside the protected class or treated differently than similarly non-protected employees. *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001). Like her hostile work environment claim, Ms. Harper's gender discrimination claim can be resolved by focusing on a single element—the requirement of adverse employment action.

Adverse employment action "is an action by the employer that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with

significantly different responsibilities, or a decision causing a significant change in benefits."

*White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (internal quotation marks

and citation omitted). In her Complaint, Ms. Harper indicates that Mr. Elder's decision to switch

her to night shift "had the effect of a demotion." [DN 1 ¶ 35]. Although the change to night shift

appears to be the premise of her discrimination claim, in her Response to the Motion for

Summary Judgment, Ms. Harper changes course. There she explains that the adverse

employment action suffered was not the switch to night shift but rather her constructive discharge

from her position as a deputy at the Jail. [DN 25 at 26–29]. Regardless of which of these Ms.

Harper relies on as the alleged adverse employment action, her claim fails.

If Ms. Harper's evidence of adverse employment action for her gender-based

discrimination claim is premised upon Mr. Elder's offer to switch her shifts, her claim must fail

based on the argument set forth in Defendants' Motion. [DN 21 at 13–15]. In *Kocsis v.*

*Multi-Care Management, Inc.*, the Sixth Circuit adopted the Seventh Circuit's analysis for

establishing a materially adverse employment action. 97 F.3d 876, 886–87 (6th Cir 1996).

> [A] materially adverse change in the terms and conditions of employment must
> be more disruptive than a mere inconvenience of job responsibilities. A materially
> adverse change might be indicated by a termination of employment, a demotion
> evidenced by a decrease in wage or salary, a less distinguished title, a material
> loss of benefits, significantly diminished material responsibilities, or other indices
> that might be unique to a particular situation.

*Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999) (citing *Crady v. Liberty Nat'l Bank &*

*Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)). Further applicable still, the Sixth Circuit

stated in *Armann v. Potter*, that a shift transfer, without more, does not amount to an adverse

employment action. 105 Fed. App'x 802, 807–08 (6th Cir 2004) (citing *Kocsis*, 97 F.3d at 886–

87; *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 800 (6th Cir. 2004); *Hunt v.*

*Rapides Healthcare Sys., LLC*, 277 F.3d 757, 769–71 (5th Cir. 2001); *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 728 (7th Cir. 2001)). Lending additional credence to this argument is the fact that Ms. Harper expressly indicated on her application for employment that she was willing to work nights, the shift that Mr. Elder eventually offered her. [DN 25-2]. Because the shift change was the same job with the same pay, benefits, duties, and working conditions, Ms. Harper did not experience an adverse employment action by Mr. Elder's suggestion to switch her shift, even if Ms. Harper perceived the shift change as a demotion. [DN 21-2 at 84–85].

Ms. Harper asserts in her Response to the instant motion that the adverse employment action taken against her was not the shift change, as alleged in her Complaint, but was instead her constructive discharge. [DN 25 at 26–29]. Constructive discharge can be a means of proving the element of an adverse employment action where the employee quits instead of being fired. *See Logan v. Denny's, Inc.*, 259 F.3d 558, 568 (6th Cir. 2001) ("Plaintiff may establish an adverse employment action by demonstrating that she was constructively discharged."). Such action "may be found where working conditions would have been so difficult or unpleasant that a reasonable person would have felt compelled to resign." *Pitts v. Michael Miller Car Rental*, 942 F.2d 1067, 1072 (6th Cir. 1991). To constitute a constructive discharge, Plaintiff must produce "evidence to show that (1) 'the employer . . . deliberately created intolerable working conditions, as perceived by a reasonable person,' and (2) the employer did so 'with the intention of forcing the employee to quit . . . .'" *Logan,* 259 F.3d at 568–69 (quoting *Moore v. Kuba Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999)). In addition to looking at the employer's intent, a plaintiff must also produce evidence of "'other aggravating factors,' demonstrating a continuous and severe pattern of discrimination." *Nickell v. Memphis Light, Gas & Water Div.*, 76 Fed. App'x 87, 95 (6th Cir. 2003) (quoting *Yates v. Avco Corp.*, 819 F.2d 630, 637 (6th Cir. 1987)).

Ms. Harper utterly failed to submit any evidence which would suggest such a motive on behalf of her employer, Mr. Elder and the Jail. Mr. Elder's offer to switch Ms. Harper's shift appears to be an offer of an accommodation rather than a suggestion designed to force her to quit. Further, as discussed previously, Ms. Harper failed to demonstrate a "severe pattern of discrimination." No reasonable jury could find from the evidence submitted by Ms. Harper that her employer "deliberately created intolerable working conditions" with the intention of forcing her to quit or that she was the subject of a "severe pattern of discrimination." *Logan*, 259 F.3d at 568–69; *Nickell*, 76 Fed. App'x at 95. Accordingly, Ms. Harper's KCRA gender-based discrimination claim must fail. Defendants' Motion for Summary Judgment is **GRANTED** as to this claim.

### 3. Gender-Based Discrimination – 42 U.S.C. § 1983

In Count II of her Complaint, Ms. Harper claims her Fourteenth Amendment rights were violated by a gender-based hostile work environment. [DN 1 ¶¶ 49–56]. She brings Count II to enforce her Fourteenth Amendment rights under 42 U.S.C. § 1983. Sexual harassment by a government official violates the Equal Protection Clause. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). To state a claim of sexual harassment based upon a hostile work environment, a plaintiff suing under § 1983 must allege facts sufficient to establish the following four elements: "(1) she was a member of a protected class; (2) she was subject to unwelcomed sexual harassment; (3) the harassment was based on her sex; and (4) the harassment created a hostile work environment . . . ." *Hickman v. Laskodi*, 45 Fed. App'x 451, 453 (6th Cir. 2002). As discussed above, Ms. Harper failed to raise a genuine dispute as to whether any alleged harassment created a hostile work environment for her KCRA claim. That being the case, it is unnecessary to repeat that lengthy analysis here. Ms. Harper's evidence also fails that element

12

for her § 1983 claim. *See Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988) ("The showing a plaintiff must make to recover on a disparate treatment claim under Title VII mirrors that which must be made to recover on an equal protection claim under section 1983."). Accordingly, it is unnecessary to consider whether the offending individual was acting under color of state law during the alleged violation. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986).

To the extent that Ms. Harper's § 1983 claim is premised on a violation of Title VII, "[t]he Sixth Circuit has held, 'Title VII provides the exclusive remedy when the only § 1983 cause of action is based on a violation of Title VII.'" [DN 1 ¶ 51]; *Graham v. City of Hopkinsville, Ky.*, 2013 WL 2120847, at *9 (W.D. Ky. May 15, 2012) (quoting *Day v. Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199, 1204 (6th Cir. 1984)). Having just discussed Ms. Harper's KCRA claims, analyzed under the same standard as Title VII claims, and found that summary judgment was appropriate in favor of Defendants it is unnecessary to repeat that analysis. Logically then, "if there is no liability under Title VII there can be no liability under § 1983." *Akers v. Alvey*, 180 F. Supp. 2d 894, 899 (W.D. Ky. 2001) (citing *Grano v. Dep't of Dev.*, 637 F.2d 1073, 1082 (6th Cir. 1980)). Because in this instance there is no liability under Title VII, Defendants cannot be held liable for a Title VII violation under § 1983. Accordingly, Defendants' Motion as to Ms. Harper's § 1983 claim is **GRANTED**.

### 4. Whistleblower Act – KRS § 61.102

In Count III of her Complaint, Ms. Harper alleges the County violated the KWA. [DN 1 ¶¶ 57–64]. Specifically, Ms. Harper claims the violation stems from the harassment culminating in her demotion that she endured following her protestations of Mr. Conaway's failure to properly document and report a PREA violation. [*Id.*]. The KWA's underlying purpose "is to protect

employees who possess knowledge of wrongdoing that is concealed or not publicly known, and who step forward to help uncover and disclose that information." *Davidson v. Com., Dep't of Military Affairs*, 152 S.W.3d 247, 255 (Ky. Ct. App. 2004).

Kentucky courts apply a burden-shifting analysis to claims arising under the KWA. *See Thornton v. Office of Fayette Cnty. Att'y*, 292 S.W.3d 324, 329 (Ky. Ct. App. 2009). To establish a prima facie case of a KWA violation, a plaintiff must prove that:

> (1) the employer is an officer of the state; (2) the employee is employed by the state; (3) the employee made or attempted to make a good faith report or disclosure of a suspected violation of state or local law to an appropriate body or authority; and (4) the employer took action or threatened to take action to discourage the employee from making such a disclosure or to punish the employee for making such a disclosure.

*Id.* (quoting *Davidson*, 152 S.W.3d at 251). Additionally, the plaintiff "must show by a preponderance of evidence that 'the disclosure was a contributing factor in the personnel action.'" *Davidson*, 152 S.W.3d at 251 (quoting KRS § 61.103(3)). If the plaintiff meets this burden, the burden then shifts to the employer "to prove by clear and convincing evidence that the disclosure was not a material fact in the personnel action." *Id.* (internal quotation marks and citation omitted).

It is undisputed that the employer in this case is an officer of the state and that Ms. Harper was employed by the state. The County argues Ms. Harper is unable to establish element four. [DN 21 at 16–17]. Ms. Harper relies heavily on the argument that Mr. Conaway's alleged behavior—yelling and threatening her to drop the issue—forms the basis for the fourth element. [DN 25 at 32]. Secondarily, Ms. Harper claims Mr. Elder refused to correct Mr. Conaway's threats and eventually offered her a different shift which constituted a demotion. [*Id.* at 31–32;

DN 1 ¶ 61]. Neither of these claims, even if accepted as true, is sufficient to satisfy the fourth requirement of the prima facie case.

As to her first argument, Ms. Harper highlights actions by Mr. Conaway, not her employer—a critical distinction as Ms. Harper brings this cause of action against the County and the legal requirement of action or threatened action must be by the *employer*. Further, as discussed in-depth above, this alleged behavior is supported only by Ms. Harper's self-serving submissions to the Court. For example, despite claiming Mr. Loukota witnessed Mr. Conaway's screaming threats, Ms. Harper submits his affidavit which makes no mention of the interaction. [DN 25-5 at 78; DN 25-8]. As to her second argument, Ms. Harper claims she informed Mr. Elder of Mr. Conaway's refusal to handle the potential ongoing PREA violation by Mr. Hernandez. [DN 25 at 14–15, 31–32; DN 25-5 at 74–75, 119]. Ms. Harper avers that upon Mr. Elder's learning of the situation with Mr. Hernandez, "[Mr.] Elder grew very upset, pointing at Conaway and stating, '[F]ix that.'" [DN 25 at 15; DN 25-5 at 75, 119]. Accepting this rendering of events, offered by both Ms. Harper and the Defendants, Mr. Elder's instructing Mr. Conaway to fix the situation in no way constitutes the type of direct action or threat designed to discourage her from making such disclosures. The Court is convinced that no reasonable jury could find based on the evidence submitted to the Court that Ms. Harper's *employer* took "took action or threatened to take action to discourage [her] from making such a disclosure or to punish [her] for making such a disclosure," a required showing to prove a violation of KRS § 61.102. Consequently, the County's Motion for Summary Judgment as to this claim is **GRANTED**.

### 5. Anti-Retaliation – KRS § 344.280

As her final cause of action, Ms. Harper claims she was retaliated against because she opposed Mr. Conaway's harassment and discriminatory conduct. [DN 1 ¶¶ 65–72]. To state a

15

claim for retaliation under KRS § 344.280, a plaintiff must allege: (1) she engaged in an activity protected by the KCRA; (2) that the exercise of her civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to her; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Brooks v. Lexington-Fayette Urban Cnty. Hous. Auth.*, 132 S.W.3d 790, 803 (Ky. 2004).

Ms. Harper asserts that she opposed harassment and discriminatory conduct, a "protected activity under KRS § 344.280" and was punished for that action. [DN 1 ¶ 67]. Defendants contend that the evidence submitted by Ms. Harper is insufficient to defeat their Motion because she failed to raise a genuine dispute as to the third and fourth elements of her retaliation claim. [DN 21 at 17–18]. Additionally, though less importantly, Defendants question whether Ms. Harper's alleged complaints rise to the level of a protected activity or were instead mere "petty workplace gripes." [*Id.* at 18].

The KCRA's retaliation claim requires a plaintiff "to show that she suffered an 'adverse employment action' as that term is defined under federal law." *Brooks*, 132 S.W.3d at 802. As previously discussed at length, pursuant to federal law, a "plaintiff must identify a materially adverse change in the terms and conditions of [her] employment to state a claim for retaliation under Title VII." *Hollins v. Atlantic Co., Inc.*, 188 F.3d 652, 662 (6th Cir. 1999). This element may be shown by any one of the earlier listed actions—termination of employment, a demotion connected with a wage or salary decrease, significantly reduced responsibilities at work, among others. *Id.* Whether Ms. Harper's evidence of adverse employment action is her alleged demotion or constructive discharge, it fails to satisfy the standard for the reasons articulated in the discussion of her gender-based discrimination claim pursuant to KRS § 344.040. *See supra* Part III(b)(2). Because the evidence submitted does not create a genuine dispute as to a material

element of her retaliation claim, Defendants' Motion for Summary Judgment as to this claim is

**GRANTED**.

## IV.    CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Plaintiff's Motion to

Exceed the Page Limit on her Response to the Motion for Summary Judgment [DN 26] is

**GRANTED** and Defendants' Motion for Summary Judgment [DN 21] is **GRANTED**.

*Joseph H. McKinley*

Joseph H. McKinley Jr., District Judge
United States District Court

April 2, 2019

cc: counsel of record